UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 1 2000

Michael N. Milby, Clerk

| IN RE: | § | |
| --- | --- | --- |
| | § | Misc. Action No. C-00-53 |
| PI ENERGY CORPORATION, | § | (Bankruptcy Appeal No. 0023) |
| | § | (Appealed from Bankruptcy |
| Debtor. | § | Case No. 98-21664-C-11) |

## SUPPLEMENT TO APPELLANT'S DESIGNATION OF RECORD ON APPEAL

TO THE CLERK OF THE COURT:

NOW COMES **PI Energy Corporation**, Revested Debtor and Appellant in the above-referenced bankruptcy (herein "Appellant"), and, pursuant to BRP 8006, files this Supplement to Appellant's Designation of Record on Appeal.

1. Appellant designates the following additional records to be included in the Court's Record in connection with the above-referenced appeal.

| Date | Docket Number | Docket Entry | Exhibit Number |
| --- | --- | --- | --- |
| 7/27/00 | 135 | Findings of Fact and Conclusions of Law on Trustee's Application For Compensation and Reimbursement | 113 |

Respectfully submitted,

_____
Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
Anne E. Catmull
Admissions No. 19615
State Bar No. 00794932
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline Blvd.
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555
**ATTORNEYS FOR APPELLANT**

16

## CERTIFICATE OF SERVICE

      I, Anne E. Catmull, hereby certify that I have served a true and correct copy of the above and foregoing instrument was served by United States Mail, Postage Prepaid, upon the parties listed below by U.S. Mail, Postage Prepaid on the 21 day of November, 2000.

Charles Bearden  
P.O. Box 4871  
Wichita Falls, TX  76308-0871  

Barbara Kurtz  
United States Trustee  
606 N. Carancahua, Suite 1107  
Corpus Christi, TX  78476

Mark Harwell  
Cotham, Harwell & Evans, P.C.  
8550 Katy Freeway, Suite 128  
Houston, TX  77024  

_____  
Anne E. Catmull

SUPPLEMENT TO APPELLANT'S DESIGNATION OF RECORD ON APPEAL    PAGE 2

113

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

IN RE: §
§
PI ENERGY CORPORATION, § CASE NO. 98-21664-C-11
§ (Chapter 11)
Debtor. §

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S APPLICATION
FOR COMPENSATION AND REIMBURSEMENT

## FINDINGS OF FACT

1. On February 25, 2000, this Court signed and entered an order appointing Charles E. Bearden ("Bearden") as the Chapter 11 Trustee of Pi Energy Corporation.

2. This case had been commenced by the filing of a voluntary petition under Chapter 11 by Pi Energy on October 19, 1998.

3. On December 8, 1998, this case was procedurally consolidated with *In re: Redfish Bay Development Corporation*, Case No. 98-21663-C-11, the voluntary Chapter 11 of Pi Energy's wholly-owned subsidiary.

4. On January 12, 1999, several creditors moved for the appointment of a Trustee, or alternatively for conversion of the case to Chapter 7.

5. On January 29, 1999, the United States Trustee moved for the appointment of an examiner.

6. On February 3, 1999, the Court appointed Philipp G. Monroe as the examiner.

7. On March 19, 1999, the examiner filed his report, which detailed, *inter alia*, substantial insider transactions within the year prior to bankruptcy.

135

8. On June 10, 1999, the United States Trustee filed a motion to convert the case from Chapter 11 to Chapter 7.

9. On July 6, 1999, the Court began a hearing on the United States Trustee's motion, which was compromised by the entry of an order requiring the Debtor to file a plan of reorganization by July 12, 1999.

10. The Debtor filed a plan and disclosure statement on July 12, 1999.

11. On September 7, 1999, the Court granted the United States Trustee's motion to convert the Redfish Bay bankruptcy to Chapter 7 and appointed Mike Boudloche as the Chapter 7 Trustee.

12. On October 18, 1999, Pi Energy filed an amended plan and disclosure statement.

13. On October 21, 1999, several creditors filed a joint amended motion to convert the Pi Energy case to Chapter 7, or to appoint a Chapter 11 trustee.

14. On November 29, 1999, Pi Energy file a second amended plan and disclosure statement.

15. Pi Energy failed to prosecute any plan of reorganization to confirmation.

16. The Court had carried the creditors motion for appointment of a trustee under advisement since a hearing on November 1, 1999. Based upon the serious nature of the allegations raised, and Pi Energy's inability to prosecute a plan to confirmation, the Court decided to appoint a Chapter 11 trustee.

17. At the time of Bearden's appointment, there was litigation pending styled *Pi Energy Corp. v. King Ranch Energy, Inc.*, Cause No. 99-20215, pending in the 281st Judicial District Court of Harris County, Texas. Prior to his appointment, Pi's counsel, Gibbs & Bruns had contacted Bearden to advise him of the litigation and the imminent trial date, then scheduled

for March 1999. King Ranch filed a motion for continuance, among other things citing the imminent appointment of a trustee as grounds, which was actually being heard when Bearden first received notice of his appointment. Using remarkably good common sense and judgment, Bearden called Gibbs & Bruns and instructed a secretary to run over to the court to advise the judge of his appointment and his objection to any continuance being granted. The 281st Judicial District Court judge then ordered that the case be tried in April and that the case be mediated as soon as possible.

18. Pursuant to mediation, held on March 6 and 7, 2000, Bearden and Gibbs & Bruns negotiated a settlement, in which the breakthrough occurred at about 2:00 a.m. on the 7th. The efforts of Trustee and Gibbs & Bruns produced a $10,000,000.00 settlement for the Estate (of which approximately $3.6 million was paid to Gibbs & Bruns as their contingency fee). Prior to the appointment of Trustee, King Ranch had made no offer to settle.

19. The settlement was an extraordinarily beneficial development for the Estate, and was the first step in obtaining a plan of reorganization that would pay all non-insider creditors the full amount of their claims. The Trustee does not take sole credit for achieving this result. The Estate was very ably served by the attorneys of Gibbs & Bruns. However, the Trustee did make a real and substantial contribution to achieving this result by exercising remarkably good judgment in vigorously prosecuting the claims against King Ranch.

20. The King Ranch Settlement alone was insufficient to assure payment to all non-insider creditors in full. The Trustee played a significant role in formulating and executing a strategy aimed at rapidly confirming a plan of reorganization that would pay non-insider creditors in full. This strategy had to reconcile several competing interests, which prior to the Trustee's appointment appeared to be deadlocked.

21.     Land Holdings held a claim of approximately $2.25 million against the Pi Estate, and a claim of over $4 million against the Redfish Bay. Land Holdings' claims arose from a deficiency in a promissory note that Land Holdings had purchased from Koch. Prior to the appointment of the Trustee, Pi had filed a suit against Land Holdings and sought to retain Gibbs & Bruns as special counsel. Conversely, Land Holdings and other creditors had been moving for the prosecution of the suspected fraudulent transfers involving insiders, which were among those identified by the examiner.

22.     Additionally, although Redfish Bay had never been a party to the King Ranch litigation, once the settlement was reached, both the Redfish Bay Trustee and Land Holdings insisted that the settlement proceeds really belonged to the Redfish Bay Estate, since the oil and gas properties that were the subject of the breached King Ranch contract were originally owned by Redfish Bay.

23.     Furthermore, the King Ranch Settlement agreement required that the Trustee deliver to King Ranch releases from Pi's shareholders, largest insider creditor, and the Redfish Bay trustee. Thus, the Trustee could not obtain the $10 million unless those releases were obtained. The shareholders attempted to employ this leverage to their own benefit, thereby risking the entire $10 million settlement.

24.     The Trustee, and Trustee's counsel, initiated a settlement conference in San Antonio on March 20, 2000, beginning at 9:30 a.m. and ending at about 8:30 p.m. that evening. The Trustee, and Trustee's counsel, successfully negotiated a settlement agreement that resolved all the above-stated controversies and assured the Estate of being able to obtain the $10 million settlement. At the same time, the settlement made a rapid, successful and non-appealable plan of reorganization a reality. It proved necessary for all parties to expend additional time and resources to finalize the

agreement reached in principle on March 20th. Nevertheless, the Trustee aggressively dogged the parties to insure that the King Ranch Settlement would not be jeopardized, and that a plan of reorganization would be confirmed.

25. Additionally, certain landowners/royalty owners, referred to herein as the Chapman Lease parties, filed proofs of claim seeking approximately $320,000 for costs of plugging and abandonment, and clean up of 11 wells; and two adversary proceedings seeking, *inter alia*, a declaration of the termination of the lease for cessation of production in paying quantities. The Trustee significantly participated in the negotiation of a settlement that provided for the escrow of $225,000 to pay all plugging and abandonment and clean up costs; for the Debtor to retain the lease as to two 160 acre units around two gas wells, and for the Debtor to have the opportunity to retain up to four additional wells, each to hold a further 160 acres.

26. On April 12, 2000, with the assistance of the Trustee, certain affiliates of the Debtor, including shareholders and Dr. Saied, filed a plan of reorganization, and Pi Energy filed a third amended disclosure statement. The plan provided for the payment of all non-insider creditors 100 percent of their claims, for the subordination of insider claims to non-insider unsecured claims, and incorporated into it the majority of the settlements that the Trustee had assisted in negotiating. Again, the Trustee demonstrated remarkably good judgment in choosing to assist the plan proponents, rather than proposing his own plan. The Trustee's judgment considerably accelerated the proceedings.

27. The plan was confirmed on May 1, 2000, without any effective opposition.

28. Under the confirmed plan, on the effective date, May 15, 2000, Bearden became a Disbursing Agent, and all property of the estate revested in Pi Energy, with the exception of funds to be held by the Disbursing Agent for the payment of allowed claims.

29.  The Trustee expended approximately 240 hours in this case.

30.  A reasonable hourly rate for his services is $150.00.

31.  He is entitled to an enhancement of that rate to $300.00 per hour, for a total award of $72,000.00.

32.  The Trustee also incurred reimbursable expenses in the amount of $6,469.96.

33.  The maximum amount the Trustee may be awarded as compensation under 11 U.S.C. § 326 (a) is $170,602.66.

## CONCLUSIONS OF LAW

1.  The Trustee is a disinterested person as defined by 11 U.S.C. § 101(14).

2.  The Trustee provided valuable services to the Estate that were necessary and beneficial.

3.  The services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issues and tasked addressed.

4.  Compensation of $72,000 is reasonable, based upon the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

5.  The Trustee is also entitled to reimbursement of $6,469.96 for reasonable and necessary expenses that he incurred.

To the extent that any finding of fact includes any conclusion of law, or any conclusion of law includes a finding of fact, then such is deemed a finding of fact or conclusion of law as appropriate, without regards to the separate headings.

SIGNED this the ___ JUL 2 7 2000 of _____ 2000.

_____
UNITED STATES BANKRUPTCY JUDGE